UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FREDIS NOEL BONILLA, individually and ) <br> d/b/a TACOS CHOICE; and CHOICE GROUP ) <br> ENTERPRISE, INC., an unknown business d/b/a ) <br> TACOS CHOICE, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 12-CV-02243-LHK <br><br> ORDER GRANTING MOTION FOR <br> DEFAULT JUDGMENT |

On October 10, 2012, the Clerk of the Court entered default against Defendant Choice Group Enterprise Inc., an unknown business entity doing business as Tacos Choice ("Defendant"), after Defendant failed to appear or otherwise respond to the Summons and Complaint in this case within the time prescribed by the Federal Rules of Civil Procedure. *See* ECF No. 15. Before this Court is the Motion for Default Judgment filed by J&J Sports Productions, Inc. ("Plaintiff"). *See* Mot. Default J. ("Mot."), ECF No. 18. Defendant, not having appeared in this action to this date, has not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. Accordingly, the hearing and the case

management conference set for July 25, 2013, are VACATED. For the reasons discussed below, Plaintiff's Motion for Default Judgment is GRANTED.

## I. BACKGROUND

Plaintiff J&J Sports Productions, Inc. is a sports and entertainment programming distributor, and alleges it secured the domestic commercial distribution rights to broadcast the "Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship Fight Program" (the "Program"), which telecast nationwide on May 7, 2011. *See* Compl. ¶ 16, ECF No. 1. Plaintiff then entered into sub-licensing agreements with various commercial entities throughout the United States, wherein it granted limited public exhibition rights to these entities in exchange for licensing fees. *See* Compl. ¶ 17. On May 7, 2011, investigator Nathan Tate observed the Program being displayed at Defendant Choice Group Enterprise Inc.'s commercial establishment, Tacos Choice, located in Salinas, California. *See* Compl. ¶ 14; Mot. at 2. Plaintiff alleges that Defendant intercepted the Program unlawfully, and intentionally exhibited it for the purpose of direct or indirect commercial advantage. *See* Compl. ¶¶ 19-20.

On May 4, 2012, Plaintiff filed this action against Defendant for: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 605, et seq.; (2) violation of the Cable Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §§ 553, et seq.; (3) conversion; and (4) violation of California Business and Professions Code §§ 17200, et seq. *See* ECF No. 1.[1] On August 31, 2012, Plaintiff served Defendant with a copy of the Summons, Complaint, and related documents. *See* ECF No. 11. Pursuant to Federal Rules of Civil Procedure Rule 12(a)(1)(A)(i), Defendant was thereby required to file and serve his response to Plaintiff no later than September 19, 2012. However, Defendant failed to appear and also failed to file any responsive pleading. *See* Decl. Thomas P. Riley Supp. Pl.'s Appl. Default J. ("Riley Decl.") ¶ 2, ECF No. 18-2.

On October 10, 2012, the Clerk of the Court granted Plaintiff's request and entered default against Defendant. *See* ECF No. 15. Plaintiff now moves for entry of default judgment pursuant to

---

[1] Originally, Plaintiff also filed this action against Defendant Fredis Noel Bonilla ("Bonilla"), individually and doing business as Tacos Choice. *See* Compl. at 1, ECF No. 1. On November 8, 2012, Plaintiff filed a notice of voluntary dismissal of Bonilla without prejudice. *See* ECF No. 17.

2
Case No.: 12-CV-02243-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1   Rule 55(b) of the Federal Rules of Civil Procedure.  *See* ECF No. 18.

## II.    DISCUSSION

### A.    Default Judgment

The Court finds that default judgment is appropriate in the instant case.  If a defendant fails to answer a complaint in a timely manner, a plaintiff may move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  The district court's decision whether to enter a default judgment is discretionary.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam).  When deciding whether a default judgment is warranted, a court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Generally, default judgments are disfavored because "[c]ases should be decided upon the merits whenever reasonably possible." *Id.* at 1472.

Here, many of the *Eitel* factors favor entry of default judgment.  First, Plaintiff will likely be prejudiced if default judgment is not entered.  Because Defendant has refused to take part in the litigation, Plaintiff will be denied the right to adjudicate the claims and obtain relief if default judgment is not granted.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Additionally, there is no indication that Defendant's default is due to excusable neglect or that material facts are disputed since Defendant has not presented a defense or otherwise communicated with the Court.  Moreover, though public policy favors decisions on the merits, litigation of the merits is simply not possible in light of Defendant's refusal to litigate.

In contrast, Plaintiff's request for maximum statutory damages weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged.  *See Eitel*, 782 F.2d at 1472.  However, given that the Court may address the reasonableness of Plaintiff's request when deciding the question of damages, the Court need not deny default judgment on this factor alone.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Mujadidi*, No.

3

11-5570, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough on its own to bar a default judgment . . . as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate.").

The second and third *Eitel* factors, involving the merits of Plaintiff's substantive claim and the sufficiency of the Complaint, warrant a closer analysis by the Court. Plaintiff's complaint alleges violations of 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as violations of California's law against conversion and California Business and Professions Code §17200. *See* Compl. at 9-10. In contrast, Plaintiff's Motion for Default Judgment only seeks damages under 47 U.S.C. § 605 and for conversion. *See* Riley Decl. ¶ 7.

Section 605 of the Federal Communications Act of 1934 "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). "[T]he 'communications' protected by § 605(a) include satellite television signals." *Id*. Section 553 of the Cable Television Consumer Protection and Competition Act of 1992, however, prohibits the unauthorized reception or interception of "any communications service offered over a *cable* system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1) (emphasis added). It follows that, generally, "a plaintiff may not recover under both § 605 and § 553 as it is highly unlikely that a pirate used a satellite dish and a cable box to broadcast a single program simultaneously." *Mujadidi*, No. 11-5570, 2012 WL 3537036, at *3 (internal citation omitted).

Plaintiff states that Defendant violated Section 605 because, "[w]ith full knowledge that the Program was not to be intercepted . . . displayed, and/or exhibited by commercial entities unauthorized to do so, . . . Defendant . . . did unlawfully intercept . . . display, and/or exhibit the Program at the time of its transmission at his commercial establishment . . . ." Compl. ¶ 19. However, Plaintiff fails to state the actual means of signal transmission used, which is necessary to determine whether Plaintiff has sufficiently stated a claim pursuant to either Section 605 or Section 553. *See* Mot. at 8 (stating "Plaintiff cannot determine the precise means that the Defendant used to receive the Program unlawfully"). Furthermore, the declaration of Plaintiff's investigator,

4

Nathan Tate, affirmatively states that the establishment "does not have a satellite dish," though also notes that a "cable box was not visible." *See* Decl. of Affiant, ECF 18-3.

When the means of signal transmission used is uncertain, courts have been split on whether to apply Section 553 or Section 605 in the context of a motion for default judgment.[2] Although the Court is inclined to only afford Plaintiff relief under Section 553 rather than Section 605 due to Plaintiff's limited factual allegations and dearth of evidentiary support of satellite use, the Court notes that both statutes provide a discretionary range of possible damage awards that partially overlap. As discussed in Part II.B, the Court awards Plaintiff damages that fall within both statutory ranges. Therefore, for the purposes of this particular case, any uncertainty as to whether Defendant violated Section 553 or 605 is immaterial; the statutory award in the same amount is equally appropriate in either case. *See G&G Closed Circuit Events, LLC v. Castro*, No. 12-01036, 2012 WL 3276989, at *3 (N.D. Cal. Aug. 9, 2012) (finding, in the context of a similar case, that "[a]ny uncertainty as to whether [Defendant] in fact violated Section 605 is immaterial in light of the fact that a statutory award in the same amount is equally appropriate in the event [Defendant] actually violated Section 553.").

Finally, the Court finds that default judgment on Plaintiff's conversion claim is also appropriate in the instant case. The elements of conversion are: (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. *See Tyrone Pacific Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981) (citing *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979)). Plaintiff properly alleges ownership of the distribution rights to the Program, misappropriation of those rights by Defendant's unlawful

---

[2] *Compare, e.g.*, *J&J Sports Prods., Inc. v Ro*, No. 09-02860, 2010 WL 668065, at *3 (analyzing the defendant's violation under Section 553, despite an investigator "[not having seen] a cable box and [having seen] a satellite dish" at the establishment, because "without better homework by the investigator, the Court will not rule out the presence of a cable box"), *and J&J Sports Prods., Inc. v Ayala*, No. 11-05437, 2012 WL 4097754, at *2 (N.D. Cal. Sept. 17, 2012) (finding that "[b]ecause sufficient facts have not been alleged" and "Plaintiff [has not] presented any affidavit evidence of a satellite, . . . 47 U.S.C. § 605 does not apply" and instead "[construing] this motion as solely seeking damages under § 553"), *with G&G Closed Circuit Events, LLC v. Castro*, No. 12-01036, 2012 WL 3276989, at *2 (N.D. Cal. Aug. 9, 2012) (finding that when "there is an insufficient basis to conclude with certainty which of the two statutes would support an award of statutory damages," it is "unsatisfactory" to presume a violation of § 553 as opposed to § 605 where Plaintiff has not sought damages under § 553).

interception, and damages. *See* Compl. ¶¶ 30-33. Therefore, Plaintiff's allegations regarding liability, which are taken as true in light of the Clerk's entry of default, are sufficient to entitle Plaintiff to damages.

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

**B.     Requests for Relief**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). Mot. at 11, 14. Plaintiff also seeks $4,200 in conversion damages, the amount Defendant allegedly would have been required to pay had Defendant licensed the Program from Plaintiff. *See* Mot. at 20.

While a court must assume that all well-pleaded allegations regarding liability are true once the Clerk of Court enters default, this same presumption does not apply to a plaintiff's request for damages. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

**1.     Statutory Damages**

Plaintiff requests maximum statutory damages available under Section 605, noting that the court has discretion to award significant damages "even in . . . cases of commercial signal piracy where there has been no egregious circumstance noted." Mot. at 11. Section 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of § 605(a), as the Court considers just. Section 553(c)(3)(A)(ii) also provides that an aggrieved party may recover a sum up to $10,000 for each violation, but affords courts discretion to award as little as $250. "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions v. Kim Thuy Ho*, No. 09-01435, 2009 WL 3047231, at \*1 (N.D. Cal. Sept. 18, 2009) (internal quotation marks and citation omitted).

6
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Plaintiff submits evidence that a commercial license for the broadcast of the Program would have cost Defendant approximately $4,200, based on the estimated 65-person capacity of Defendant's commercial establishment. *See* Pl.'s Aff. Supp. Appl. Default J. ("Gagliardi Decl.") ¶ 8, ECF No. 20; *see id.*, Ex. 1 (advertising that to order the *Manny Pacquiao v. Shane Mosley* fight on May 7, 2011, the rate was $2,200 for seating up to 50 people and $4,200 for seating between 51 and 100 people). Additionally, as evidence of Defendant's potential profit, Plaintiff submits evidence that during Plaintiff's proximately ten-minute investigation of Tacos Choice, there were a total of two patrons and there was no cover charge. *See* Decl. of Affiant at 1-2. Because the amount that Defendant made during the alleged unlawful exhibition of the Program is difficult to determine, the Court shall base statutory damages on the cost of the commercial license.

Accordingly, the Court finds that Plaintiff is entitled to $4,200 in statutory damages.

### 2. Enhanced Damages

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." In contrast, 47 U.S.C. § 553(c)(3)(B) authorizes the Court discretion to award up to $50,000.

The Court does not find that an award of maximum damages under either statute is appropriate here. In support of enhanced damages award, Plaintiff submits evidence that Defendant is a repeat offender, which is one factor indicating that Defendant's actions were willful and may warrant a greater enhanced damages award. *See* Suppl. Decl. Thomas P. Riley ("Suppl. Riley Decl."), ECF No. 18-4; *see, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000) (noting that "a higher statutory award may be justified in cases where defendants are repeat offenders who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent"). Specifically, on April 8, 2011, this Court entered default judgment against the same Defendant in *J & J Sports Prods., Inc. v. Bonilla*, No. 10-05140-LHK, 2011 WL 1344346 (N.D. Cal. Apr. 8, 2011).

However, the Court also notes that there is no evidence of significant commercial

advantage or private financial gain in the instant case, which weakens the case for an award of greatly enhanced statutory damages. For example, there is no evidence that Defendant advertised the fight, assessed a cover charge, had a minimum purchase requirement, or had a special premium on food and drink on the night of the fight. *See Kingvision Pay-Per-View, Ltd.*, 102 F. Supp. 2d at 1198 n.2 ("An establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers."). Indeed, the investigator states in his affidavit that the establishment had merely two customers during the entirety of the approximately ten-minute investigation, and played the fight on only one 40-inch television set located above the register and counter. *See* Decl. of Affiant at 1-2.

Further, the Court notes that, in the previous lawsuit against the exact same establishment at the exact same address, Plaintiff claimed that the cost of a commercial license was only $2,200, based on the establishment's *50-person capacity*. *See J & J Sports Prods., Inc. v. Bonilla*, No. 10-05140-LHK, ECF No. 9-3 (N.D. Cal. Apr. 8, 2011) (Mot. Default J.) (stating that, "if a commercial establishment had a maximum fire code occupancy of 50 persons, the commercial sublicense fee would have been $2,200"). Now, Plaintiff claims that the cost of a commercial license is $4,200 based on the establishment's alleged 65-person capacity. *See* Decl. Affiant at 1. The Court is skeptical about placing too much emphasis on the investigator Nathan Tate's declaration that Tacos Choice has a 65-person capacity given the sudden expansion in estimated room capacity from 50 to 65 that is not supported by anything other than what appears to be a ball-park estimate. Notaby, had the establishment maintained its earlier estimated 50-person capacity, the commercial license in the instant action would have been $2,200. *See* Pl.'s Aff. Supp. Pl.'s Appl. Default J., ECF No. 20, Ex. 1 (listing a commercial license rate of $2,200 for a seating range of 0 to 50 persons).

In light of the fact that there were only two patrons during Plaintiff's entire approximately ten-minute investigation, there was no cover charge, there was no promotion of the Program by advertising, there was no charge for a special premium for food and drinks, and the unexplained discrepancy in the estimated capacity of Tacos Choice, the Court finds that an award of $2,200 in enhanced damages is more than adequate to compensate Plaintiff for lost profits and to deter

Defendant's future infringement.

### 3. Damages for Conversion

Plaintiff also seeks $4,200 in damages for conversion under California Civil Code § 3336. Damages for conversion are based on the value of the property at the time of conversion. *See Tyrone Pac. Intern., Inc.*, 658 F.2d at 666. As noted in Part II.B.1., the commercial license allegedly would have cost Defendant $4,200. *See* ECF No. 20. Thus, Plaintiff's request is appropriate.

Accordingly, the Court finds that Plaintiff is entitled to $4,200 in damages for conversion.

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Default Judgment is GRANTED. Judgment shall be entered in favor of Plaintiff J&J Sports Productions, Inc., and against Defendant Choice Groups Enterprise, Inc., an unknown business entity doing business as Tacos Choice. Plaintiff shall recover $10,600 in total damages.[3] The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 14, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[3] Although Plaintiff's Complaint requests attorney's fees pursuant to 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605(e)(3)(B)(iii), Plaintiff's Motion for Default Judgment does not specifically request these fees and costs, nor does it provide any evidence to support providing such an award. Thus, the Court declines to award attorney's fees and costs at this time. If Plaintiff's counsel wishes to recover attorney's fees and costs, he must file an affidavit and supporting documentation within 30 days of the date of this Order, including a curriculum vitae or resume as well as billing and cost records to justify such an award.